IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 18, 2015

**ROBERT E. BOLING v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Sullivan County
No. C56458     Robert H. Montgomery, Jr., Judge**

_____

**No. E2014-02258-CCA-R3-PC – Filed September 24, 2015**
_____

Petitioner, Robert E. Boling, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in concluding that he failed to prove that he received ineffective assistance from his trial counsel.  Based upon a thorough review of the record and the applicable law, the decision of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

L. Dudley Senter, III, Bristol, Tennessee, for the appellant, Robert Edward Boling.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Barry Staubus, District Attorney General; and William Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*I. Procedural Background*

Petitioner was convicted of aggravated robbery for snatching Sarah McMurray's purse away from her while in a Kroger parking lot in Kingsport, Tennessee, on October 5, 2006.  He was sentenced to imprisonment for thirty years with release eligibility at 60% as a Career Offender.  In his direct appeal to this Court, his conviction was upheld, but because Petitioner's motion for new trial had been untimely filed, we only reviewed the sufficiency of the evidence.  *State v. Robert Edward Bowling*, No. E2008-00351-

CCA-R3-CD, 2009 WL 482763, at *1 (Tenn. Crim. App. Feb. 26, 2009), *no perm. app. filed.*[1]

Petitioner's first petition for post-conviction relief was granted, and Petitioner received an opportunity to file another motion for new trial, which was followed by a delayed appeal. This Court again affirmed his conviction. *State v. Robert Edward Boling*, No. E2011-00429-CCA-R3-CD, 2013 WL 816174, at *1 (Tenn. Crim. App. Mar. 5, 2013), *no perm. app. filed*.

After the conclusion of the delayed appeal, Petitioner filed a motion to reopen the post-conviction proceedings, alleging ineffective assistance of trial counsel. After an evidentiary hearing, the post-conviction court denied relief through an order entered on October 30, 2014. Petitioner filed a timely notice of appeal and now raises the issue of whether his trial counsel provided ineffective assistance by (1) failing to seek suppression of a witness's pre-trial identification of Petitioner, (2) failing to seek suppression of Petitioner's incriminating statements and confession, and (3) failing to adequately investigate the case.

## II. Factual Background

### A. Trial[2]

On October 5, 2006, the victim and her husband were shopping at a Kroger grocery store in Kingsport, Tennessee. As they returned to their parked vehicle near the back of the parking lot, the victim saw a man, whom she believed to be a store employee collecting abandoned shopping carts. Suddenly, the man "jerked" her pocketbook away and fled. The victim's pocketbook contained credit cards, checks, and cash. The force of the jerk caused the victim to fall to the ground. She bruised her head and broke her left arm.

Tracy Lawson worked for a laundry cleaning company which owned a store in the same shopping center as the Kroger. She was unloading a delivery van, when she observed a man come around the corner of the building. Ms. Lawson watched the individual carefully because it was odd for someone to be walking into the employee parking area. She then heard yelling, and the man began running past her, "carrying a woman's pocketbook." She then saw two other males chasing the man. Ms. Lawson observed that the man with the purse wore an orange tee shirt, a baseball cap, and blue

---

[1] We note that Petitioner's name in the court file for his direct appeal is spelled "Boling," while the filed opinion and judgment form have it spelled "Bowling."

[2] The following facts are derived from this Court's opinions in *Robert Edward Bowling*, 2009 WL 482763, at *1-4, and *Robert Edward Boling*, 2013 WL 816174, at *6-7, *9.

jeans. He also "had a little bit of a goatee." Ms. Lawson told one of her coworkers to call 911.

One of the pursuers was the victim's husband, and the other was Larry Beckner. Mr. Beckner saw the man carrying a pocketbook and began chasing the man after hearing the victim's husband call for help. Eventually, Mr. Beckner caught up with the perpetrator and grabbed his leg. The perpetrator freed his leg, but threw down the pocketbook and continued running.

Mr. Beckner described the perpetrator as having "like a ball cap on, sun glasses, sort of stubby facial hair, like reddish blond, a reddish color." He also said the perpetrator was wearing "a pair of blue jeans, an orange shirt and . . . work boots or something like that." However, Mr. Beckner testified that he had difficulty seeing the perpetrator because the sun was "sort of in [his] eyes."

A Kingsport Police Officer later spotted a man sitting on a picnic bench, who he believed matched the description of the purse-snatcher. The suspect was wearing a gray tee shirt, and his head was shaven. He also had facial hair and a mustache. The police officer observed a black ball cap several feet behind the suspect and arrested him. Petitioner was that man.

Petitioner was taken to Ms. Lawson's workplace for identification. She testified that there was "no doubt" that Petitioner was the man she saw fleeing with the pocketbook, even though he "had changed clothes and took his hat off." Ms. Lawson again identified Petitioner in court. However, Mr. Beckner was unable to identify Petitioner as the man he chased down.

Shirley Aston was a cashier at a convenience store, which was located approximately one mile from the Kroger. On October 5, 2006, one hour prior to the robbery, Petitioner bought lottery tickets at the store. Ms. Aston recognized Petitioner because she had known him for "a long time." She identified herself and Petitioner in two photographs from the store's security surveillance cameras taken on October 5th. In the photograph, Petitioner was wearing a black baseball cap, an orange tee shirt, and blue jeans.

## B. Post-Conviction Hearing[3]

Petitioner testified that after he was arrested on October 5, 2006, he was handcuffed, placed in the back of a police car, and taken to the Kroger parking lot where

---

[3] These facts were presented over the course of several hearings held on January 27, 2010, February 3, 2010, and September 19, 2014.

the crime occurred. The arresting officer instructed Petitioner to step out of the car. Petitioner stood behind the open back door and looked over the back door for about two minutes. Petitioner was then taken to the Kingsport Police Department.

After being booked, Petitioner accompanied Detective David Joe Cole to an interview room. According to Petitioner, Detective Cole said, "Mr. Boling, you know you're in a lot of trouble . . . . you're probably facing twelve to fifteen years for aggravated robbery." Petitioner responded, "Well, I guess I need a lawyer then, huh?" Detective Cole said, "Well, normally I'd say yes, but in this case, I don't think that's going to be necessary. The woman recovered her pocketbook and nobody was hurt, so I tell you what I'm going to do. If you just tell me what happened, go ahead and confess to this, we'll close the book on it. I'll charge you with a misdemeanor, and you can get out of here." Petitioner asked, "What do you need to know?" Detective Cole told Petitioner to tell him everything that he had done that day. Petitioner told Detective Cole everything that he had done since he awoke, including going to the convenience store. When Petitioner's story arrived at the robbery, he told Detective Cole, "I'm not confessing to that." Detective Cole replied, "Without the confession, there's no deal." Petitioner said, "I don't guess there's a deal then." Detective Cole told someone to "lock him up," and Petitioner was taken to a holding cell "for a little while." Because Detective Cole smelled alcohol on Petitioner, he asked another officer to administer a breathalyzer test to Petitioner.

Later, Petitioner was taken back to the interview room, and Detective Cole gave Petitioner a pack of cigarettes. He told Petitioner, "This is it. This is your last chance, and if [I] walk out of this room without your confession, it's aggravated robbery." Petitioner mulled over the proposition and then asked, "What do you want me to say?" Detective Cole answered, "Tell me how you robbed her."

Petitioner denied taking the pocketbook from the victim's arm and said that he took it from her shopping cart. Detective Cole disagreed with him, so Petitioner said, "Just write it down, and I'll sign it." Together, they went through everything again, while Detective Cole wrote it down. Petitioner signed the written statement without reading it and asked, "So you're gonna go out there and tell them to drop this charge?" Detective Cole responded, "Absolutely not. You just confessed to aggravated robbery." Petitioner denied being given *Miranda* warnings by Detective Cole or reading the typed *Miranda* warnings at the top of the statement form. Petitioner said that some of the initialing on the statement form was not made by him.

The Public Defender's Office was appointed to represent Petitioner at trial, and he was notified by mail which attorney had been assigned to his case. Petitioner first met his trial counsel at a court date. Petitioner met with trial counsel three times in the courtroom before the trial for a total of fifteen minutes. "From the minute this thing

started," Petitioner wanted trial counsel to file a motion to suppress his statements and confession. When he first met with trial counsel, Petitioner told him the "whole story . . . exactly what happened." However, Petitioner did not know if trial counsel pursued a motion to suppress, even though he remembered being present for a brief hearing on a motion to suppress. Afterward, trial counsel told Petitioner that he had "messed up" and that Petitioner had "grounds for post-conviction."

Petitioner "wrote letters and letters and phone calls" to trial counsel, but could not get trial counsel to discuss the case with him. Petitioner wrote a letter to the judge and then wrote three times to the Board of Professional Responsibility. Subsequently, there was a hearing on whether trial counsel should be removed from the case, but the trial court decided that trial counsel would continue representing Petitioner. According to Petitioner, he did not meet with trial counsel until "five minutes before trial."

Detective Cole testified that he had been in the Criminal Investigations Unit of the Kingsport Police Department since 1990. On October 5, 2006, he was assigned to investigate this case. At 3:53 p.m., he began interviewing Petitioner about the robbery. He filled in Petitioner's personal information and then read the *Miranda* warnings aloud to Petitioner as typed on the statement form. Usually, Detective Cole also has a defendant read the waiver of rights aloud before signing that portion of the form. Petitioner appeared to understand his rights.

During the first interview, Petitioner denied being at the crime scene, and he was sent back to his jail cell. Because Petitioner said that he had consumed alcohol during the day, Detective Cole had another officer administer a breathalyzer test. The results showed that Petitioner's blood alcohol content was .13. However, during the first interview, Detective Cole did not observe that Petitioner was noticeably impaired or too intoxicated to make a statement.

Later, Petitioner asked to speak with Detective Cole, and a second interview commenced around 9:30 p.m. Detective Cole again read Petitioner the *Miranda* warnings. Petitioner gave a different statement, this time admitting to taking the pocketbook. Detective Cole watched Petitioner read the statement before signing it, and Petitioner initialed several corrections that he asked Detective Cole to make to the statement.

Detective Cole denied that Petitioner ever asked for an attorney and also denied that he made any promises to Petitioner to induce him to make a statement. Detective Cole said that he did not, at any point, tell Petitioner that he would only be charged with a misdemeanor if he cooperated with the investigation.

Trial counsel testified that he was an Assistant Public Defender and had practiced criminal defense since 1993. Once appointed to represent Petitioner, trial counsel filed a motion for discovery and reviewed all of the statements contained therein. Trial counsel recalled meeting with Petitioner, but he could not identify the specific dates that he did so. Usually, those meetings occurred in the holding cell when Petitioner was scheduled for court appearances. Because the State would not make a plea offer below the maximum sentence, trial counsel began preparing for trial "from the moment [he] talked with the prosecutor."

Trial counsel investigated the circumstances of Petitioner's statements to Detective Cole. Petitioner told trial counsel that he had been drinking, and trial counsel obtained a copy of the breathalyzer test results from the prosecutor. Trial counsel filed a motion to suppress those statements and any resulting evidence based on Petitioner's intoxication. Trial counsel did not remember Petitioner's informing him that he had been offered a misdemeanor charge or had attempted to invoke his right to an attorney during the interviews. Accordingly, the motion to suppress the statements was not based on a theory of coercion or a violation of the right to counsel. Trial counsel asserted that he would have included such bases in the motion to suppress had he believed that there were grounds for either. When trial counsel interviewed Detective Cole about the statements, Detective Cole reported that Petitioner initially denied everything but later asked to speak to Detective Cole and gave a voluntary statement.

On the day of the suppression hearing, the prosecutor agreed not to use the statements as evidence so trial counsel did not go forward with the hearing. Both parties announced the agreement to the trial court. Consequently, trial counsel did not expect for Ms. Aston to testify about Petitioner's presence at the convenience store because that information was obtained through Petitioner's statement to Detective Cole. When Ms. Aston was called to testify during the trial, trial counsel objected and recalled having an "aside" on the issue of whether she could testify, but a jury-out hearing was not held. The trial court admitted Ms. Aston's testimony because a separate motion to suppress evidence from the statements as "fruit of the poisonous tree" had not been filed. Trial counsel admitted that he felt he was "winning" Petitioner's case until her testimony was introduced. He testified, "[I]n retrospect, yes, I believe I should have had [a suppression hearing]." Trial counsel also admitted that he told Petitioner that he should file a petition for post-conviction relief on this issue. However, trial counsel also stated that it was his "true belief" that, had he proceeded with the suppression hearing, the trial court would have denied the motion and ruled Petitioner's statements to be admissible. Thus, had trial counsel not prevailed in the suppression hearing, Petitioner would have had "a real problem" because the State most likely would have introduced the statements at trial, in addition to the testimony of Ms. Aston and the security camera images.

Trial counsel also interviewed the arresting officer about the case. Part of the trial defense was based on the discrepancies in the eyewitness descriptions provided to the officer and Petitioner's appearance when he was arrested. Trial counsel was aware that Ms. Lawson made a field identification of Petitioner after he was arrested, and trial counsel looked into the nature of the identification. Trial counsel did not file a motion to suppress the identification, but he cross-examined Ms. Lawson about this issue at trial.

Tammy Boling testified that Petitioner was her ex-husband. They divorced before the crime in this case occurred, but she and Petitioner continued to maintain an "amicable relationship" after the divorce. After Petitioner was arrested, he called her from jail and told her that he had been arrested, but he did not tell her why. He then called her the following day and explained what had happened to him, including Detective Cole's offer of a misdemeanor charge in exchange for a confession. After trial counsel was appointed, Petitioner introduced Ms. Boling to trial counsel and told him that he was authorized to discuss the case with her. Several weeks later, Petitioner asked Ms. Boling to contact trial counsel and ask him some questions about the case. Ms. Boling called trial counsel numerous times but she never was able to speak with him on the phone.

At some point, Petitioner asked Ms. Boling to contact the Kingsport Police Department and inquire about the results of the breathalyzer test administered to him. She did so and learned that the results were available, so Ms. Boling then left a specific voicemail informing trial counsel that Petitioner wanted him to get a copy of the test results. Petitioner later told Ms. Boling that the State had "agreed not to use the statement and anything from that statement could not be used."

After the trial, Ms. Boling and Petitioner's mother were outside of the courthouse when trial counsel approached them and said something to indicate that he had "screwed up" and that his performance was a basis for Petitioner's appeal.

### III. Analysis

Petitioner claims that he is entitled to post-conviction relief from his conviction for aggravated robbery and argues that his trial counsel provided ineffective assistance by (1) failing to seek suppression of Ms. Lawson's pre-trial identification of Petitioner, (2) failing to seek suppression of Petitioner's statements and confession, and (3) failing to adequately investigate the case.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d

152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). A defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Id.*

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

## A. Pre-Trial Identification

The post-conviction court concluded that Petitioner had not proven prejudice from trial counsel's failure to challenge the pre-trial identification by Ms. Lawson because there was not a reasonable probability that the identification would have been suppressed even had such a motion been filed.

To avoid exclusion from trial, "an identification must not have been conducted in such an impermissibly suggestive manner as to create a substantial likelihood of irreparable misidentification." *State v. Cribbs*, 967 S.W.2d 773, 794 (Tenn. 1998) (citing *Simmons v. United States*, 390 U.S. 377 (1968)). Nonetheless, an identification that is conducted in an impermissibly suggestive manner will not be excluded if the witness's identification was otherwise reliable under the circumstances. *State v. Philpott*, 882 S.W.2d 394, 400 (Tenn. Crim. App. 1994). Courts use a multi-factor inquiry to determine reliability, which includes "the opportunity of the witness to view the criminal at the time of the crime; the witness's degree of attention at the time of the crime; the accuracy of the witness's prior description; the level of certainty demonstrated at the confrontation; the time elapsed between the crime and the confrontation." *Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972)) (internal numbering omitted). Tennessee courts have long permitted identifications where "the show-up occurs as an on-the-scene investigatory procedure shortly after the commission of the crime." *State v. Thomas*, 780

S.W.2d 379, 381 (Tenn. Crim. App. 1989); *see, e.g., Joseph Lamont Johnson, Jr. v. State*, No. M2012-02310-CCA-R3-PC, 2014 WL 793636, at *11 (Tenn. Crim. App. Feb. 27, 2014), *perm. app. denied* (Tenn. July 14, 2014).

Based on the evidence in the record, we agree with the post-conviction court that Ms. Lawson's identification was neither the product of an impermissibly suggestive procedure nor unreliable. The show-up occurred shortly after the crime occurred, and Petitioner was apprehended as part of the ongoing on-the-scene investigation. Moreover, Ms. Lawson gave an accurate description of the perpetrator before the show-up occurred, specifically noted that Petitioner had changed his shirt and discarded his ball cap, and testified that she had "no doubt" that Petitioner was the man she saw fleeing the Kroger parking lot with a pocketbook. Because there is not a reasonable probability that a motion to suppress the identification would have been successful, Petitioner has not established either deficient performance or prejudice and is not entitled to relief on this basis.

### B. Statements and Confession

The post-conviction court concluded that trial counsel was not ineffective for failing to pursue the motion to suppress Petitioner's statements to a judicial conclusion because there was not a reasonable probability that such a motion would have been granted. The court specifically accredited the testimony of Detective Cole over that of Petitioner and found that Petitioner was not too impaired to make a voluntary statement and also that Detective Cole did not induce or coerce Petitioner to make the statements by promising to charge Petitioner with a misdemeanor rather than a felony.

The constitutions of the United States and the State of Tennessee prohibit the government from compelling a criminal defendant to make self-incriminating statements. *State v. Brock*, 327 S.W.3d 645, 687 (Tenn. Crim. App. 2009) (citing U.S. Const. amend V; Tenn. Const. art. I, § 9). Thus, only statements that are made voluntarily are admissible against a defendant. *State v. Climer*, 400 S.W.3d 537, 567-68 (Tenn. 2013). When evaluating the voluntariness of a statement, "the essential inquiry . . . is whether a suspect's will was overborne so as to render the confession a product of coercion." *Id.* at 568 (citing *Dickerson v. United States*, 530 U.S. 428, 432-33 (2000)). Indeed, "coercive police activity is a necessary predicate to finding that a confession is not voluntary . . . ." *Brock*, 327 S.W.3d at 687 (quoting *State v. Smith*, 933 S.W.2d 450, 455 (Tenn. 1996)). Whether a statement is voluntary requires examination of the totality of the circumstances, and relevant circumstances include:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the

accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured[,] intoxicated[,] or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep[,] or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

*Climer*, 400 S.W.3d at 568 (quoting *State v. Huddleston*, 924 S.W.2d 666, 671 (Tenn. 1996)) (alteration in original). Furthermore, an incriminating statement "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of improper influence." *Brock*, 327 S.W.3d at 687 (quoting *Bram v. United States*, 168 U.S. 532, 542-43 (1897)).

The voluntariness of a confession is a question of fact, *State v. Sanders*, 452 S.W.3d 300, 305 (Tenn. 2014) (citations omitted), and the State bears the burden of proving the voluntariness of a confession by a preponderance of the evidence, *id.* (citing *State v. Stamper*, 863 S.W.2d 404, 405 (Tenn. 1993)).

The evidence shows that Petitioner's blood alcohol content was elevated to nearly .13 at the time he was first interviewed by Detective Cole. However, the post-conviction court accredited Detective Cole's testimony that Petitioner was not noticeably impaired during either the first interview or the second interview that occurred several hours after the breathalyzer test was administered. Intoxication, standing alone, is not a sufficient ground to suppress a statement if the evidence shows that the defendant understood his rights. *State v. Bell*, 690 S.W.2d 879, 882 (Tenn. Crim. App. 1985). As long as that statement is coherent, *State v. Perry*, 13 S.W.3d 724, 738 (Tenn. Crim. App. 1999), as shown by the fact that the accused was able to narrate events and state his own participation, the statement is admissible. *State v. Green*, 613 S.W.2d 229, 232-33 (Tenn. Crim. App. 1980). Detective Cole testified that he informed Petitioner of his constitutional rights before the first and second interviews and that Petitioner appeared to understand his waiver of these rights, which is also supported by Petitioner's signature on the statement form.

According to Detective Cole, Petitioner initiated the second interview in which he confessed to the crime and made the confession voluntarily—not in exchange for a reduced charge. The evidence does not preponderate against the factual findings of the post-conviction court. Accordingly, Petitioner has failed to prove that trial counsel's decision not to pursue the motion to suppress his statements to a judicial conclusion was prejudicial because there is not a reasonable probability that the motion to suppress would have been granted.

It follows then that, if Petitioner's statements and confession were made voluntarily and without violation of his constitutional rights, the rule of exclusion for "fruit of the poisonous tree" would be inapplicable to Ms. Aston's testimony and the security camera images, which were introduced at trial, because there was no "poisonous tree" to bear fruit in the first place. Consequently, trial counsel could not have performed ineffectively for failing to seek a judicial ruling on the admissibility of such evidence.

We also note that trial counsel's decision to rely on the representation of the prosecutor that Petitioner's statements would not be used at trial, rather than pursuing a judicial ruling on the motion to suppress, could also be considered a tactical decision. Whereas the prosecutor's agreement ensured that the statements would not be used against Petitioner, even though Ms. Aston's testimony and the security images were introduced, judicial resolution of the motion to suppress could have resulted in all of the incriminating evidence, including the statements, being admitted against Petitioner. Petitioner has not shown that trial counsel's performance was deficient in this regard.

## C. Investigation

The post-conviction court concluded that trial counsel's preparation for and presentation of Petitioner's case at trial was not deficient. Defense counsel has a duty to investigate "all apparently substantial defenses available." *Baxter*, 523 S.W.2d at 935 (quoting *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974)); *see also Burns*, 6 S.W.3d at 462. Defense counsel also "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Burns*, 6 S.W.3d at 462 (quoting *Strickland*, 466 U.S. at 691). However, Petitioner has not presented any evidence of what additional preparation or investigation by trial counsel would have produced in Petitioner's favor. Simply put, Petitioner merely claims that trial counsel's performance did not satisfy his own expectations. The post-conviction court found that trial counsel met with Petitioner several times, adequately prepared a defense, and ably presented that defense at trial. Because the evidence in the record supports these findings, we agree that Petitioner has failed to prove that trial counsel rendered ineffective assistance by failing to adequately investigate Petitioner's case. Petitioner is not entitled to relief on this basis.

In his appellate brief, Petitioner suggests that the presumed prejudice standard of *United States v. Cronic*, 466 U.S. 648, 656-57 (1984), should be applied in this case, rather than the traditional standard for ineffective assistance provided in *Strickland*. "A reviewing court will presume prejudice to an accused's right to counsel only when there has been the complete deprivation of counsel at a critical stage of the proceedings, a complete failure to subject the State's case to adversarial testing, or under circumstances of such magnitude that no attorney could provide effective assistance." *Berry v. State*, 366 S.W.3d 160, 174 (Tenn. Crim. App. 2011). For support, Petitioner cites *Rickman v.*

*Bell*, 131 F.3d 1150 (6th Cir. 1997). In *Rickman*, the court found that the defendant was constructively denied the effective assistance of counsel when his trial counsel failed to advocate for the defendant throughout the trial and repeatedly engaged in overtly hostile conduct against the defendant, his own client. 131 F.3d at 1159-60. However, the facts of that case are clearly distinguishable from this case, where Petitioner has pointed only to his dissatisfaction with the amount of time trial counsel spent discussing the case with him before trial. We will not presume prejudice in a situation where there has been no showing of actual or constructive denial of counsel or of an actual conflict of interest between trial counsel and a defendant. *See Strickland*, 466 U.S. at 692; *Cronic*, 466 U.S. at 662.

## IV.  Conclusion

Because Petitioner has not proven by clear and convincing evidence that he received ineffective assistance from trial counsel, he is not entitled to post-conviction relief. Therefore, the post-conviction court's denial of the petition is affirmed.

_____
TIMOTHY L. EASTER, JUDGE